**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISION**

| | | |
|---|---|---|
| **Jason Haley, Preston Herrington, and Taylor Logsdon, individually and on behalf of all others similarly situated,** | § | |
| *Plaintiffs,* | § | Civil Action No. 3:26-cv-00148-DMB-RP |
| **v.** | § | |
| **X.AI Corp., Space Exploration Technologies Corp., and MZX Tech LLC,** | § | |
| *Defendants.* | § | |

**SPACE EXPLORATION TECHNOLOGIES CORP.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**


Daniel W. Van Horn (MS Bar No. 102105)
BUTLER SNOW LLP
6075 Poplar Ave., Suite 500
Memphis, TN 38187
(901) 680-7331
danny.vanhorn@butlersnow.com

P. Ryan Beckett (MS Bar No. 99524)
BUTLER SNOW LLP
1020 Highland Colony Pkwy., Suite 1400
Ridgeland, MS 39157
(601) 948-5711
(601) 948-5177
ryan.beckett@butlersnow.com

**Pro Hac Vice*

*Attorneys for Space Exploration Technologies Corp.*

K. Winn Allen, P.C.*
Grace C. Brier*
Megan McGlynn Butler*
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 389-5000
(202) 389-5200
winn.allen@kirkland.com
grace.brier@kirkland.com
megan.butler@kirkland.com

Jeremy A. Fielding, P.C.*
Michael Kalis*
KIRKLAND & ELLIS LLP
4550 Travis Street
Dallas, Texas 75205
(214) 972-1770
(214) 972-1771
jeremy.fielding@kirkland.com
michael.kalis@kirkland.com

J. Matthew Rice*
KIRKLAND & ELLIS LLP
150 3rd Avenue South, Suite 1220
Nashville, Tennessee 37201
(629) 222-0165
(629) 222-0101
matthew.rice@kirkland.com

## TABLE OF CONTENTS

**Page**

INTRODUCTION ... 1

BACKGROUND ... 2

I. About SpaceX ... 2

II. MZX's Southaven Plant ... 3

LEGAL STANDARD ... 4

ARGUMENT ... 5

I. The Court Lacks Personal Jurisdiction Over SpaceX. ... 5

A. SpaceX is not subject to personal jurisdiction based on its own contacts with Mississippi. ... 6

1. General Jurisdiction. ... 6

2. Specific Jurisdiction. ... 8

B. SpaceX is not subject to personal jurisdiction based on the acts of its subsidiaries, X.AI Corp. and MZX Tech LLC. ... 9

II. The Complaint fails to state a claim against SpaceX. ... 14

A. The Complaint lacks any well-pleaded facts tied to SpaceX. ... 14

B. The Complaint fails to state claims for negligence per se, public nuisance, and negligent infliction of emotional distress. ... 17

1. Negligence Per Se ... 17

2. Public Nuisance. ... 18

3. Negligent Infliction of Emotional Distress. ... 18

CONCLUSION ... 19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al Rushaid v. Nat'l Oilwell Varco, Inc.*,
757 F.3d 416 (5th Cir. 2014) ....................10

*Alpine View Co. Ltd. v. Atlas Copco AB*,
205 F.3d 208 (5th Cir. 2000) ....................10

*Andrews v. Enpro Indus., Inc.*,
2025 WL 837324 (N.D. Miss. Mar. 17, 2025) ....................18

*Armstrong v. Sw. Airlines Co.*,
2021 WL 4391247 (N.D. Tex. Sept. 24, 2021)....................17

*Asarco, Inc. v. Glenara, Ltd.*,
912 F.2d 784 (5th Cir. 1990) ....................12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................5, 14, 15, 17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................5, 18

*BNSF Ry. Co. v. Tyrrell*,
581 U.S. 402 (2017)....................6, 7

*Buchanan v. Ameristar Casino Vicksburg, Inc.*,
957 So.2d 969 (Miss. 2007)....................13, 14

*Burbank-Glendale-Pasadena Airport Auth.*,
220 Cal. App. 3d 1602 (Cal. Ct. App. 1990) ....................18

*Callier v. Nat'l United Grp. LLC*,
2021 WL 5393829 (W.D. Tex. Nov. 17, 2021)....................15, 16

*Canadian Nat'l Ry. Co. v. Waltman*,
94 So.3d 1111 (Miss. 2012).................... *passim*

*Claassen v. City & Cnty. of Denver*,
30 P.3d 710 (Colo. App. 2000)....................18

*Colwell Realty Invs., Inc. v. Triple T Inns of Ariz., Inc.*,
785 F.2d 1330 (5th Cir. 1986) ....................4

*Corcoran v. CVS Health Corp.*,
169 F. Supp. 3d 970 (N.D. Cal. 2016) ....................13

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)....................6, 7

*Del Castillo v. PMI Holdings N. Am. Inc.*,
2016 WL 3745953 (S.D. Tex. July 13, 2016)....................15

*DIRECTV, Inc. v. Budden*,
420 F.3d 521 (5th Cir. 2005)....................5

*Edwards v. Wal-Mart Stores, Inc.*,
2019 WL 1061670 (N.D. Miss. Mar. 6, 2019)....................12, 13

*Ellis v. Koppers, Inc.*,
2006 WL 2432092 (N.D. Miss. Aug. 21, 2006)....................10

*Evans v. Miss. Dep't of Hum. Servs.*,
36 So. 3d 463 (Miss. Ct. App. 2010)....................19

*Fellowship Filtering Techs., LLC v. Alibaba.com, Inc.*,
2016 WL 6917272 (E.D. Tex. Sept. 1, 2016)....................13

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
592 U.S. 351 (2021)....................1, 6

*Frank v. PNK (Lake Charles) LLC*,
947 F.3d 331 (5th Cir. 2020)....................7

*Freudensprung v. Offshore Tech. Servs., Inc.*,
379 F.3d 327 (5th Cir. 2004)....................13

*Estate of Gaines v. FedEx Ground Package System, Inc.*,
2022 WL 894108 (S.D. Miss. Mar. 25, 2022)....................9, 10

*Giambattista v. Am. Airlines, Inc.*,
584 F. App'x 23 (2d Cir. 2014)....................16

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011)....................6

*Hanback v. GGNSC Southaven, LLC*,
2014 WL 3530613 (N.D. Miss. July 15, 2014)....................10, 11

*Jackson v. Tanfoglio Giuseppe, S.R.L.*,
615 F.3d 579 (5th Cir. 2010)....................6

*Jobe v. ATR Mktg., Inc.*,
87 F.3d 751 (5th Cir. 1996)....................4

*Licea v. Drydock Co.*,
952 F.3d 207 (5th Cir. 2015) ....................10

*Lopez v. Ramirez*,
2022 WL 3230442 (5th Cir. Aug. 10, 2022)....................14

*Magee v. Bank of N.Y. Mellon Corp.*,
2024 WL 4957594 (S.D. Miss. Jan. 16, 2024) ....................15, 16, 17

*Miller v. E.I. DuPont de Nemours & Co.*,
880 F. Supp. 474 (S.D. Miss. 1994)....................17

*Nixon v. Waste Mgmt., Inc.*,
2005 WL 1876379 (N.D. Miss. Aug. 8, 2005) ....................9

*Pace v. Cirrus Design Corp.*,
93 F.4th 879 (5th Cir. 2024) ....................5, 8

*Panda Brandywine Corp. v. Potomac Elec. Power Co.*,
253 F.3d 865 (5th Cir. 2001) ....................5, 8

*Panhandle Oil Co. v. Trigg*,
114 So. 625 (Miss. 1927)....................18

*Pearson v. Shriners Hosps. for Child., Inc.*,
133 F.4th 433 (5th Cir. 2025) ....................6

*Petrobras Am., Inc. v. Samsung Heavy Indus. Co., Ltd.*,
9 F.4th 247 (5th Cir. 2021) ....................3

*Prescott v. Leaf River Forest Prods.*,
740 So.2d 301 (Miss. 1999)....................18

*Revell v. Lidov*,
317 F.3d 467 (5th Cir. 2002) ....................9

*Rice v. First Energy Corp.*,
339 F. Supp. 3d 523 (W.D. Pa. 2018)....................13

*Rosson v. McFarland*,
962 So.2d 1279 (Miss. 2007)....................11, 12, 14

*Savoie v. Pritchard*,
122 F.4th 185 (5th Cir. 2024) ....................10

*Sears, Roebuck & Co. v. Devers*,
405 So.2d 898 (Miss. 1981)....................18, 19

*Shambaugh & Son, L.P. v. Steadfast Ins. Co.*,
91 F.4th 364 (5th Cir. 2024) ....................8, 9

*Stuart v. Spademan*,
772 F.2d 1185 (5th Cir. 1985) ....................4

*Thomas v. Univ. of Miss.*,
2018 WL 6613807 (N.D. Miss. Dec. 17, 2018)....................15

*Travelers Indem. Co. v. Calvert Fire Ins. Co.*,
798 F.2d 826 (5th Cir. 1986) ....................9

*United States v. Bestfoods*,
524 U.S. 51 (1998)....................1, 10, 12

*Walden v. Fiore*,
571 U.S. 277 (2014)....................6

*Wheeler v. Lebanon Valley Auto Racing Corp.*,
303 A.D.2d 791 (N.Y. App. Div. 2003) ....................18

*Williams v. U.S. Bank Nat'l Ass'n*,
2014 WL 847012 (S.D. Miss. Mar. 4, 2014) ....................19

**Statutes**

28 U.S.C. § 1746....................5

Miss. Code Ann. § 79-35-15....................7

Southaven, Miss., Code tit. X, art. IV, ch. 2. ....................18

**INTRODUCTION**

Space Exploration Technologies Corp. ("SpaceX") does not belong in this case. Plaintiffs' claims turn on the noise created by turbines at a plant in Southaven, Mississippi. But SpaceX does not own or operate that plant. To be sure, SpaceX owns *the companies* that do, X.AI Corp. ("xAI") and MZX Tech, LLC ("MZX"). But those companies are separate corporate entities that are already defendants in this action. And it is a "bedrock principle" of corporate law—one "deeply ingrained in our economic and legal systems"—"that a parent corporation ... is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61-62 (1998). Because SpaceX is a separate corporate entity that does not own or operate the Southaven plant, the Court must dismiss SpaceX for two independent reasons.

*First*, the Court lacks personal jurisdiction over SpaceX. Under the Due Process Clause, Plaintiffs bear the burden of showing either that SpaceX is "at home" in Mississippi (general jurisdiction) or that the asserted claims "arise out of or relate to" SpaceX's purposeful activity in Mississippi (specific jurisdiction). *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021). Plaintiffs cannot carry that burden because—as the Declaration of Stephen Herndon makes clear, *see* Ex. C., Decl. ¶¶ 1-9—SpaceX lacks the requisite contacts with Mississippi. Nor is there any basis for treating SpaceX as equivalent to its subsidiaries. The complaint's allegations come nowhere close to justifying the "extraordinary" step of piercing the corporate veil. *Canadian Nat'l Ry. Co. v. Waltman*, 94 So.3d 1111, 1116 (Miss. 2012).

*Second*, the complaint fails to state a claim against SpaceX. Plaintiffs allege no facts linking SpaceX to the Southaven plant or Plaintiffs' claims. Just the opposite, Plaintiffs' own allegations admit that entities *other than* SpaceX are responsible for the plant. A few conclusory assertions lumping in SpaceX with other defendants cannot cure that dispositive shortcoming.

Even if the Court had personal jurisdiction over SpaceX and Plaintiffs plausibly stated a claim against it, at bare minimum, the Court should dismiss the legally deficient claims for negligence per se, public nuisance, and negligent infliction of emotional distress.

For all these reasons, Court should grant the motion and dismiss all claims against SpaceX.

## BACKGROUND

### I. About SpaceX

SpaceX was founded in 2002 with the ultimate objective of colonizing Mars and making humans a multi-planetary species. In the 24 years since, the company has made giant strides towards that goal, while transforming the space technology sector in the process. SpaceX currently has two business lines. Its space launch business designs, manufactures, and launches the world's most advanced rockets and spacecraft. SpaceX's launch customers include NASA, the United States defense and intelligence communities, foreign governments, as well as commercial satellite operators and telecommunications companies around the world. Additionally, SpaceX's Starlink satellite broadband business provides broadband connectivity to millions of customers in more than 160 markets around the globe using a constellation of thousands of satellites and a global network of ground infrastructure. SpaceX is incorporated in Texas, and its headquarters is in Starbase, Texas. *See* Compl. ¶ 23.

In February 2026—months after the opening of the Southaven plant—SpaceX acquired xAI. Decl. ¶ 3; *see also* Compl. ¶ 22. Following the acquisition, Defendant X.AI Corp. is "a wholly owned subsidiary of X.AI Holdings LLC," which is "a wholly owned subsidiary of SpaceX." Decl. ¶¶ 3-4. And "Defendant MZX Tech LLC is a wholly owned subsidiary of X.AI Corp." *Id.* ¶ 4. SpaceX did not expressly assume the liabilities of X.AI Corp. or MZX Tech LLC and is not the successor in interest to those entities. *Id.* ¶ 7. Nor did SpaceX assume control of the

Southaven plant. *Id.* ¶ 8. Following the acquisition, SpaceX, X.AI Corp., and MZX Tech LLC remain separate corporate entities. *See id.* ¶ 5.

## II. MZX's Southaven Plant

Over the past several years, xAI and MZX built world-class data center and power-generation facilities in "the Digital Delta"—an area embracing Western Tennessee, Northern Mississippi, and Eastern Arkansas. In 2024, xAI began building a data center in Memphis, Tennessee to house the "world's largest AI supercomputer." Compl. ¶ 73. xAI later expanded its investment with a second data center in Whitehaven, Tennessee. *Id.* ¶ 78. As operations expanded, so did the need for electricity. In July 2025, to "ensur[e] that [xAI's] supercomputer never jeopardizes citizens' access to power," Ex. A (referenced at Compl. ¶ 73 n.25),[1] MZX built a power-generation facility in Southaven, Mississippi. Compl. ¶ 32. The Southaven plant sits on industrially zoned property that was "once occupied by a Duke Energy power plant." *Id.* ¶ 81. A few months later, xAI announced its intent to open a third data center in Southaven. Compl. ¶ 131.

State and local officials praised these investments, endorsing them as a boon to the region. The Southaven Mayor recognized that "[a] development of this magnitude is coveted worldwide and will bring exponential benefits to Southaven, DeSoto County, Mississippi and the Mid-South region." Ex. B (document referenced at Compl. ¶ 36 n.7). He noted that "the entire region will feel the major financial benefits, career opportunities and community enhancement both by xAI's direct operations and ensuing economic growth spurred by them." *Id*. And he confirmed that "xAI has followed all of the regulatory processes to obtain a permit to operate here," *id.*, declaring "xAI and Southaven, Mississippi, a great partnership now and into the future!" Compl. ¶ 36.

[1] This Court may consider documents "referenced" in the complaint at the motion-to-dismiss stage. *Petrobras Am., Inc. v. Samsung Heavy Indus. Co., Ltd.*, 9 F.4th 247, 252 n.2 (5th Cir. 2021).

At the Southaven plant, MZX operates natural gas turbines to generate power. According to the complaint, xAI and MZX (not SpaceX) "sit[ed] the Southaven Plant," purchased the land, "executed two transmission line easement agreements to facilitate operations," "secured an air permit" from state regulators, and have "operat[ed], and rapidly expand[ed]" the plant. Compl. ¶¶ 32-33, 38-39. xAI "provided [management] oversight for operations," "represented MZX and xAI in discussions with the [State] and the public relating to the Southaven site," listed "on its website numerous job openings" for roles at the plant, and responded to media inquiries regarding the plant. *Id.* ¶¶ 37, 40, 42, 111, 125-26.

In June 2026, Plaintiffs filed this lawsuit complaining of noise and vibration generated by turbines at the Southaven plant. *See* Compl. Pointing to the alleged noise, the complaint asserts claims for private nuisance, public nuisance, negligence, negligence per se, and negligent infliction of emotional distress. And it names as defendants xAI, MZX, and SpaceX "as a successor in interest to xAI." *Id.* at 1. With respect to SpaceX, Plaintiffs allege, without support, that "SpaceX presently owns, operates, manages and/or controls the Southaven Plant" and that "[a]ll Defendants conduct substantial and continuous business within the State of Mississippi." Compl. ¶¶ 27-28.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(2), a complaint must be dismissed if the Court lacks personal jurisdiction. "When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). That jurisdictional determination "is not restricted to a review of the plaintiff's pleadings." *Jobe v. ATR Mktg., Inc.*, 87 F.3d 751, 753 (5th Cir. 1996). A defendant may dispute the complaint's allegations through affidavits, declarations, and other evidence. *Colwell Realty Invs., Inc. v. Triple T Inns of Ariz., Inc.*, 785 F.2d 1330, 1333 (5th Cir. 1986). "Facts asserted by defendants in their affidavits

that are undisputed by factually supported allegations in a plaintiff's affidavit are taken as true." *Pace v. Cirrus Design Corp.*, 93 F.4th 879, 894 (5th Cir. 2024).[2] And the court does not "credit [a plaintiff's] conclusory allegations, even if uncontroverted." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001).

Under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Meeting this standard requires "more than labels and conclusions"; it requires *facts*. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not "suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678; *see Twombly*, 550 U.S. at 557.

## ARGUMENT

### I. The Court Lacks Personal Jurisdiction Over SpaceX.

This Court should dismiss all claims asserted against SpaceX under Federal Rule of Civil Procedure 12(b)(2). SpaceX owns, through a series of other entities, the companies that operate the Southaven plant: xAI Corp. and MZX Tech, LLC. But contrary to Plaintiffs' allegations, SpaceX itself does not own or operate the Southaven Plant, and that defeats Plaintiffs' personal-jurisdiction theory. To satisfy the constitutional limits of the Due Process Clause, a plaintiff must establish that the nonresident defendant has "certain minimum contacts" with the forum state "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice."

[2] The same goes for declarations. *See* 28 U.S.C. § 1746; *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 530-31 (5th Cir. 2005).

*Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quotation omitted). SpaceX lacks those contacts. And Plaintiffs cannot impute to SpaceX the actions of its subsidiaries.

### A. SpaceX is not subject to personal jurisdiction based on its own contacts with Mississippi.

SpaceX lacks the general or specific contacts needed to establish personal jurisdiction. "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). Even assuming Plaintiffs satisfy Mississippi's long-arm statute, the exercise of personal jurisdiction must "comport[] with the limits imposed by federal due process." *Id.* Under the Due Process Clause, "[j]urisdiction may be general or specific, depending on the nature of the defendant's forum-related contacts." *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 584 (5th Cir. 2010). But "[e]ach defendant's contacts with the forum [s]tate must be assessed individually," with a specification of "who did what." *Pearson v. Shriners Hosps. for Child., Inc.*, 133 F.4th 433, 442 (5th Cir. 2025).

Plaintiffs fail to establish sufficient contacts to support personal jurisdiction over SpaceX here. No general jurisdiction exists because SpaceX is not "at home" in Mississippi. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). And no specific jurisdiction exists because Plaintiffs do not identify purposeful contacts that relate or give rise to the asserted claims. *Ford Motor Co.*, 592 U.S. at 359.

**1. General Jurisdiction.** SpaceX is not subject to general jurisdiction in Mississippi. A corporation is subject to general jurisdiction only where its "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler*, 571 U.S. at 127. "The 'paradigm' forums in which a corporate defendant is 'at home'" are "the corporation's place of incorporation and its principal place of business." *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017). "[I]n an exceptional case, a corporate defendant's operations in another

forum may be so substantial and of such a nature as to render the corporation at home in that State." *Id.* (quotations omitted). Merely conducting some operations or business in a forum, though, "does not suffice to permit the assertion of general jurisdiction" over a corporation. *Id.* at 414; *see also* Miss. Code Ann. § 79-35-15 ("The appointment or maintenance in this state of a registered agent does not by itself create the basis for personal jurisdiction over the represented entity in this state.").

Here, Plaintiffs cannot establish general jurisdiction over SpaceX in Mississippi. As Plaintiffs recognize, SpaceX is "incorporated in the state of Texas with a principal place of business in Texas." Compl. ¶ 23; Decl. ¶ 2. And Plaintiffs have not even attempted to allege facts suggesting this is the "exceptional case" where SpaceX's operations in Mississippi are "so substantial and of such a nature as to render the corporation at home" outside its place of incorporation and principal place of business. *BNSF*, 481 U.S. at 413. In their complaint, Plaintiffs fail to identify any "continuous and systematic" contacts with Mississippi, instead relying solely on a conclusory recitation of the standard. *Daimler*, 571 U.S. at 127; *see* Compl. ¶ 28. In fact, they point to no SpaceX contacts in Mississippi at all, outside of their contradicted assertions that SpaceX "presently owns, operates, manages and/or controls the Southaven Plant" and "the MACROHARDDR data center in Southaven." *See* Compl. ¶¶ 27-28; Decl. ¶¶ 8-9. But even if true, those minimal contacts are a far cry from the sort of "continuous and systematic" contacts needed to "render [SpaceX] essentially at home" in Mississippi. *Daimler*, 571 U.S. at 127. Plaintiffs come nowhere close to making the "incredibly difficult" showing needed "to establish general jurisdiction in a forum other than the place of incorporation or principal place of business." *Frank v. PNK (Lake Charles) LLC*, 947 F.3d 331, 336 (5th Cir. 2020) (quotation omitted).

**2. Specific Jurisdiction.** Plaintiffs cannot establish specific jurisdiction either, because Plaintiffs' claims do not derive from any purposeful contacts SpaceX might have with Mississippi.

For a court to exercise specific jurisdiction over a defendant, there must be a "connection between a defendant's forum-related contacts and a plaintiff's causes of action." *Shambaugh & Son, L.P. v. Steadfast Ins. Co.*, 91 F.4th 364, 372 (5th Cir. 2024). To analyze whether a sufficient connection exists, courts look to "(1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *Id.* (quotations omitted). Analyzing these considerations, "there must be a strong relationship among the *defendant*, the *forum*, and the *litigation*." *Pace*, 93 F.4th at 902.

Here, Plaintiffs cannot "connect[]" SpaceX to their asserted tort claims. *Shambaugh & Son*, 91 F.4th at 372. Each of Plaintiffs' claims arises from the alleged noise created at the Southaven plant. Yet, the complaint contains no specific factual allegations tying SpaceX to the operation of the turbines at the Southaven plant. It simply declares that "SpaceX presently owns, operates, manages and/or controls the Southaven Plant." Compl. ¶¶ 25-27. That "conclusory allegation" should not be credited, "even if uncontroverted." *Panda Brandywine*, 253 F.3d at 869; *see infra* 15-16. But, regardless, SpaceX *does* controvert the allegation. As Stephen Herndon's declaration explains, "SpaceX does not own, operate, manage, or control the power generation facility at 2875 Stanton Road in Southaven, Mississippi (the "Southaven Facility") and has never done so." Decl. ¶ 8. "Nor did SpaceX design, construct, or approve the Southaven facility." *Id.* In the personal-jurisdiction analysis, the evidence supplied in SpaceX's declaration controls, not

Plaintiffs' conclusory allegations. *Travelers Indem. Co. v. Calvert Fire Ins. Co.*, 798 F.2d 826, 831 (5th Cir. 1986); *see also Nixon v. Waste Mgmt., Inc.*, 2005 WL 1876379, at *2 (N.D. Miss. Aug. 8, 2005) (same).

Accepting those facts and "look[ing] only to the contact out of which the cause of action arises," Plaintiffs cannot satisfy any of the three specific-jurisdiction prongs. *See Revell v. Lidov*, 317 F.3d 467, 472 (5th Cir. 2002). SpaceX did not "purposefully direct" activities toward Southaven. *Shambaugh & Son*, 91 F.4th at 372. Plaintiffs' claims do not "arise[] out of or result[] from" any activity by SpaceX in Southaven, as "SpaceX does not own, operate, manage, or control the [challenged] power generation facility" in Southaven. *Id.*; Decl. ¶ 8. And it would be fundamentally "unfair" and "unreasonable" to exercise personal jurisdiction over SpaceX when it lacks relevant Mississippi contacts. *Shambaugh & Son*, 91 F.4th at 372.

Put simply, Plaintiffs cannot establish personal jurisdiction over SpaceX because their claims do not stem from, and cannot be attributed to, SpaceX. The Court should dismiss SpaceX from this case.

### B. SpaceX is not subject to personal jurisdiction based on the acts of its subsidiaries, X.AI Corp. and MZX Tech LLC.

Unable to establish personal jurisdiction with SpaceX's own contacts, Plaintiffs are left with the contacts of SpaceX's subsidiaries. But a subsidiary's contacts cannot be used to establish personal jurisdiction over the parent unless a plaintiff can justify piercing the corporate veil to treat the separate entities as one—a step "not lightly undertaken" under Mississippi law. *Canadian Nat'l Ry. Co.*, 94 So.3d at 1115 (quotations omitted); *see also Estate of Gaines v. FedEx Ground Package System, Inc.*, 2022 WL 894108, at *4 (S.D. Miss. Mar. 25, 2022) (quoting *Canadian* and granting motion to dismiss where plaintiffs "neither allege nor establish the elements required to

pierce the corporate veil).[3] Plaintiffs here have not come close to showing that this is the "extraordinary" case, *Canadian Nat'l Ry. Co.*, 94 So.3d at 1116, where taking that step is justified.

"It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." *Bestfoods*, 524 U.S. at 61 (quotation omitted). "Imputing to a party the actions of its codefendants merely on the ground that the entities are jointly owned or controlled or share representation would contravene the fundamental principle of corporate separateness." *Al Rushaid v. Nat'l Oilwell Varco, Inc.*, 757 F.3d 416, 423 (5th Cir. 2014). Thus, a "foreign parent corporation is not subject to the jurisdiction of a forum state merely because its subsidiary is present or doing business there." *Ellis v. Koppers, Inc.*, 2006 WL 2432092, at *3 (N.D. Miss. Aug. 21, 2006) (quotation omitted).

That means Plaintiffs cannot establish jurisdiction over SpaceX merely by pointing to the operations of SpaceX's subsidiaries, xAI and MZX. *See* Decl. ¶¶ 5-9. "The mere existence of a parent-subsidiary relationship is not sufficient to warrant the assertion of jurisdiction over the foreign parent." *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 218 (5th Cir. 2000). And while Plaintiffs allege "upon information and belief" that "SpaceX is the successor in interest to

---

[3] SpaceX analyzes the piercing-the-corporate-veil issue under Mississippi law, which courts in this district routinely apply in this context. *See, e.g., Estate of Gaines v. FedEx Ground Package Sys., Inc.*, 2022 WL 894108, *4 (S.D. Miss. Mar. 25, 2022) ("Mississippi law governs whether the Court can pierce the corporate veil to exercise personal jurisdiction."); *Hanback v. GGNSC Southaven, LLC*, 2014 WL 3530613, *5 (N.D. Miss. July 15, 2014) (applying the Mississippi Supreme Court's three-part test for piercing the corporate veil). Even if Texas law applied, "the primary factor for jurisdictional veil-piercing is the defendant's control of internal business operations." *Savoie v. Pritchard*, 122 F.4th 185, 192 (5th Cir. 2024). Texas courts look to similar factors like "observance of corporate formalities," and require a showing "that the two entities cease to be separate so that the corporate fiction should be disregarded to prevent fraud or injustice." *Licea v. Drydock Co.*, 952 F.3d 207, 213 (5th Cir. 2015). So "[w]hether the applicable law is the law of the state of formation (Texas) or that of the forum state [Mississippi], the outcome is the same." *Savoie*, 122 F.4th at 192, n.3.

xAI," Compl. ¶¶ 26-27, SpaceX's declaration directly controverts this allegation: SpaceX is not the successor in interest to xAI. Decl. ¶ 7; *see supra* 2-3. So even if xAI and MZX are subject to personal jurisdiction in Mississippi, that alone does not suffice to establish personal jurisdiction over SpaceX.

To establish personal jurisdiction over SpaceX based on its subsidiaries' conduct, Plaintiffs must show that at least one of SpaceX's subsidiaries is subject to personal jurisdiction *and* that the subsidiary's activities "may be properly imputed [to the parent] by means of piercing the corporate veil." *Hanback v. GGNSC Southaven, LLC*, 2014 WL 3530613, at *6 (N.D. Miss. July 15, 2014). But "[p]iercing the corporate veil of a subsidiary to reach the parent corporation is not lightly undertaken," and courts should not do so "except in those extraordinary factual circumstances where to do otherwise would subvert the ends of justice." *Canadian Nat'l Ry. Co.*, 94 So.3d at 1115-16 (quotations omitted). To survive a motion to dismiss under 12(b)(2), a "complaint alleging a piercing of the corporate veil" must "set forth factual allegations indicating: (1) some frustration of expectations regarding the party to whom he looked for performance, (2) the flagrant disregard of corporate formalities by the defendant corporation and its principals; and (3) a demonstration of fraud or other equivalent misfeasance on the part of the corporate shareholder." *Id.* at 1116; *see also Rosson v. McFarland*, 962 So.2d 1279, 1285 (Miss. 2007).

Plaintiffs allege nothing of the sort. Plaintiffs make no allegations that address either the first or third requirement of piercing the corporate veil: They do not allege a frustration of Plaintiffs' expectations, and they do not allege any fraud, misfeasance, or frustration of contractual expectations by SpaceX. This pleading deficiency is fatal to any attempt to state a claim to pierce the corporate veil.

And even if those two requirements were adequately pleaded, the allegations as to the remaining requirement—"flagrant disregard for corporate formalities by the defendant corporation and its principals," *id.* at 1286—are either factually wrong, legally insufficient, or both.

Plaintiffs allege "[u]pon information and belief" that SpaceX and xAI share "a continuity of management, personnel, assets, and operations." Compl. ¶ 25. But the extent of the alleged overlap is a single person: Elon Musk, who serves as CEO of both companies. *See* Compl. ¶ 24. And that fact gets Plaintiffs nowhere. It is a "well established principle of corporate law that directors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately, despite their common ownership." *Bestfoods*, 524 U.S. at 69 (quotation omitted). Even when, as here, two corporations share a CEO, "the corporate personalities remain distinct." *Id.* This Court has previously recognized that very rule. *See Edwards v. Wal-Mart Stores, Inc.*, 2019 WL 1061670, at *4 (N.D. Miss. Mar. 6, 2019) (Brown, J.) ("[N]either the shared address nor the fact that a vice-president at the parent holds a general partner position in the subsidiary can establish a plaintiff's prima facie case for jurisdiction.").

Next, Plaintiffs highlight a statement by Elon Musk suggesting that, at some unspecified future time, xAI may be "dissolved as a separate company" and become part of the same corporate entity as SpaceX. *See* Compl. ¶ 24. For at least three reasons, that statement does not help Plaintiffs.

First, even assuming xAI will be "dissolved as a separate company" in the future, that has not happened yet, *see* Decl. ¶¶ 5-6, and "the relevant time for determining jurisdiction is the filing of the complaint," *Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784, 787 n.1 (5th Cir. 1990).

Second, nothing in Mr. Musk's statement suggests any "disregard for corporate formalities by the defendant corporation and its principals." *Rosson*, 962 So.2d at 1286. Quite the opposite:

The statement cited in Plaintiffs' complaint itself agrees that—whatever may happen in the future—xAI is currently "a separate company" from SpaceX. Comp. ¶ 24.

Third, even if Mr. Musk had suggested that the two companies were the same, the statement still would not by itself justify taking the "extraordinary" step of imputing a subsidiary's contacts to the parent company. *Canadian Nat'l Ry.*, 94 So.3d at 1116. Time and again, courts have held that plaintiffs cannot pierce the corporate veil by pointing to public statements referring to two separate entities as one. For instance, the Fifth Circuit has made clear that pointing to "websites" and "SEC filings" referring to two entities "collectively" is "insufficient to overcome the presumption of corporate separateness." *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 346-47 (5th Cir. 2004). Similarly, a subsidiary's "use of a form bearing a parent company's name, without more, suggests nothing about the level of control the parent company exerts over the subsidiary." *Edwards*, 2019 WL 1061670, at *4.[4] Statements such as these may tend to show a "significant connection" between the entities, but that's not what matters; what matters is whether the entities "observe basic corporate formalities," like maintaining separate "bank accounts," "minutes, corporate books, accounting records," "payrolls," "articles of incorporation and bylaws." *Buchanan v. Ameristar Casino Vicksburg, Inc.*, 957 So.2d 969, 980 (Miss. 2007).

[4] Numerous other courts nationwide have concluded that public statements treating a parent and subsidiary as a single entity, without more, do not suffice to establish personal jurisdiction over a parent company. *See, e.g.*, *Fellowship Filtering Techs., LLC v. Alibaba.com, Inc.*, 2016 WL 6917272, at *5 (E.D. Tex. Sept. 1, 2016) (concluding that "broad, sweeping statements made" in public filings "indicating that the [defendant] entities are 'closely integrated' … without more, do not counsel in favor of disregarding the corporate form."); *Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 984 (N.D. Cal. 2016) ("that separate corporate entities present[] themselves as one online does not give rise to the level of unity of interest required to show companies are alter egos"); *Rice v. First Energy Corp.*, 339 F. Supp. 3d 523, 537 (W.D. Pa. 2018) (finding statements in public filings "fall way short of showing that [defendant] actually controlled the daily operations of [subsidiary]").

On that front, Plaintiffs allege nothing. They have not alleged any "abuse of the corporate form." *Canadian Nat'l Ry.*, 94 So.3d at 1116. They have not alleged that maintaining SpaceX, xAI, and MZX as separate entities is a "sham." *Buchanan*, 957 So.2d at 978. They have not alleged "factual circumstances" so "clearly extraordinary" that "piercing the corporate veil" is necessary. *Rosson*, 962 So.2d at 1284. And they have not asserted that respecting the distinct corporate entities in this case "would subvert the ends of justice." *Buchanan*, 957 So.2d at 977.

In sum, Plaintiffs' allegations fall far short of the kind that would justify piercing the corporate veil under Mississippi law. The Court should adhere to the "long string of decisions reflecting [Mississippi's] commitment to the legal integrity of the corporate entity," *Rosson*, 962 So.2d at 1284, and decline to hale SpaceX into court on the basis of its subsidiaries' contacts.

## II. The Complaint fails to state a claim against SpaceX.

Plaintiffs' claims against SpaceX fail on the merits too. The complaint lacks *any* facts specific to SpaceX's conduct. And even if Plaintiffs had linked SpaceX to the Southaven plant, their claims for negligence per se, public nuisance, and negligent infliction of emotional distress rest on flawed legal theories and "formulaic recitation[s]" that require dismissal. *Iqbal*, 556 U.S. at 681.

### A. The Complaint lacks any well-pleaded facts tied to SpaceX.

Plaintiffs fail to state a claim against SpaceX for a simple reason: They fail to allege any well-pleaded facts that SpaceX owned or operated the Southaven plant.

"When multiple plaintiffs each lodge claims against multiple defendants, the Complaint must allege sufficient facts to state plausible claims to relief as to *each* plaintiff's claim against *each* defendant." *Lopez v. Ramirez*, 2022 WL 3230442, at *1 (5th Cir. Aug. 10, 2022). A complaint fails to "adequately stat[e] a claim against a defendant" when it does not "distinguish between the actions of named defendants" and "lump[s] all Defendants together and make[s] no

differentiation between Defendants as to any action taken." *Magee v. Bank of N.Y. Mellon Corp.*, 2024 WL 4957594, at *4 (S.D. Miss. Jan. 16, 2024) (quotations omitted); *see also Thomas v. Univ. of Miss.*, 2018 WL 6613807, at *5 (N.D. Miss. Dec. 17, 2018). Crucially, a "pleading must provide specific factual allegations of violations against specific defendants." *Callier v. Nat'l United Grp. LLC*, 2021 WL 5393829, at *4 (W.D. Tex. Nov. 17, 2021).

Here, the complaint contains no well-pleaded factual allegations linking SpaceX to the operation of the Southaven plant. According to the complaint, MZX and/or xAI "sit[ed] the Southaven Plant," purchased the land, "publicly confirmed xAI's presence in Southaven," "executed two transmission line easement agreements," "secured an air permit" from state authorities, conducted "discussions with [state authorities] and the public relating to the Southaven site," "operat[ed], and rapidly expand[ed], the Southaven Plant," "list[ed] on its website numerous job openings in Southaven for roles" related to the plant, responded to media inquiries regarding the plant's operations, and discussed plant operations with city officials. *See, e.g.*, Compl. ¶¶ 32-42, 80, 110-12, 125-26, 135-37. None of that involves SpaceX. So by the complaint's own allegations, entities other than SpaceX are responsible for the plant.

The sole assertion related to SpaceX's activities is that the company "presently owns, operates, manages and/or controls the Southaven Plant." Compl. ¶ 27. But that "bare assertion[]," without any "factual enhancement," is "conclusory and not entitled to be assumed true." *Iqbal*, 556 U.S. at 678, 681. Indeed, courts have rejected similar allegations that a defendant was "responsible for" the "design," "maintenance," "inspection," and "operation" of a refinery as insufficient "to state a claim because they consist merely of labels and conclusions and naked assertion[s] devoid of further factual enhancement." *Del Castillo v. PMI Holdings N. Am. Inc.*, 2016 WL 3745953, at *13 (S.D. Tex. July 13, 2016) (alterations and quotations omitted); *see also*

*Magee*, 2024 WL 4957594, at *5 (rejecting complaint which "relies too heavily on legal conclusions"). To state a cause of action, Plaintiffs needed to plead additional facts about SpaceX's specific conduct.

Worse still, the complaint's other allegations contradict these vague and conclusory assertions. Courts "need not credit [g]eneral, conclusory allegations ... when they are belied by more specific allegations of the complaint." *Giambattista v. Am. Airlines, Inc.*, 584 F. App'x 23, 25 (2d Cir. 2014) (ellipses in original) (quotations omitted). And the complaint here alleges that xAI (not SpaceX) hires the personnel that run the Southaven plant, and that MZX (not SpaceX) was "formed specifically to facilitate" the purchase of real property in Southaven. *See* Compl. ¶¶ 33-34, 42.

Finally, Plaintiffs cannot attribute xAI and MZX's alleged conduct to SpaceX by ignoring corporate separateness, *see supra* 9-14, or by lumping all three entities together through group pleading. Plaintiffs allege, for example, that "Defendants [defined as xAI, MZX, and SpaceX] increased the number of 'temporary' gas turbines at the Southaven Plant to 57." Compl. ¶ 157; *see, e.g.*, ¶¶ 65, 71, 82-85 (other examples of impermissible group pleading).[5] This and other group allegations are insufficient: "General allegations lumping all defendants together and failing to identify specific actions of individual defendants will not suffice to raise an inference of plausible liability against any individual defendant." *Callier*, 2021 WL 5393829, at *4; *see also Magee*, 2024 WL 4957594, at *4. And "[u]sing the 'collective term "Defendants" ... with no

[5] Factually, the group allegations do not describe SpaceX's conduct, which plaintiffs appear to (at least implicitly) acknowledge. For example, the allegation that "Defendants increased the number of' 'temporary' gas turbines at the Southaven Plant to 57" is accompanied by a citation to an article describing xAI's operations. Compl. ¶ 157 & n.81.

distinction as to what acts are attributable to whom' fails to meet the fair notice standard." *Id.* (ellipses in original) (quotations omitted).

Thus, without any well-pleaded facts connecting SpaceX to the Southaven plant, the complaint lacks "factual content that allows the court to draw the reasonable inference that [SpaceX] is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**B. The Complaint fails to state claims for negligence per se, public nuisance, and negligent infliction of emotional distress.**

At minimum, Plaintiffs fail to state a claim for negligence per se, public nuisance, and negligent infliction of emotional distress, for all of the reasons discussed in more detail in X.AI Corp. and MZX Tech LLC's Motion to Dismiss and supporting memorandum that SpaceX incorporates herein. xAI and MZX Mot. to Dismiss ("xAI Mot."); xAI and MZX Mem. of Law in Supp. of Mot. to Dismiss ("xAI Mem.") 5-15. Each of these claims turns on flawed legal theories or "formulaic recitation[s]" that call for dismissal. *Iqbal*, 556 U.S. at 681.

**1. Negligence Per Se**. Plaintiffs cannot state a negligence per se claim premised on alleged violations of the Southaven Municipal Code, because the Code forecloses a private right of action. xAI Mem. 5-9. Courts have repeatedly recognized that where the legislature "did not intend to create a private right of action," an "alleged violation of that statute by defendant cannot provide a basis for a negligence per se claim." *Miller v. E.I. DuPont de Nemours & Co.*, 880 F. Supp. 474, 480 (S.D. Miss. 1994). Indeed, when a statute forms "a comprehensive regulatory scheme, enforced by a governmental agency," it "evinces a [legislative] intent to disallow private rights of action not included in the statute—including negligence per se." *Armstrong v. Sw. Airlines Co.*, 2021 WL 4391247, at *4 (N.D. Tex. Sept. 24, 2021). Here, Plaintiffs' claim rests on the theory that Defendants violated noise ordinances in the Southaven Municipal Code. Compl. ¶¶ 269-83. But the Code lacks a private right of action and dictates that governmental actors, not private

parties, will enforce those ordinances. Southaven, Miss., Code tit. X, art. IV, ch. 2. § 10-141 ("The enforcement of this chapter shall be the responsibility of the chief of police or his designee."). So, Plaintiffs' negligence per se claim fails as a matter of law.

**2. Public Nuisance.** Plaintiffs fail to state a claim for public nuisance. xAI Mem. 9-12. Private parties can assert public nuisance only by alleging a special injury that *differs* from that suffered by the public. *Panhandle Oil Co. v. Trigg*, 114 So. 625, 626 (Miss. 1927) (collecting authorities); *see also Prescott v. Leaf River Forest Prods.*, 740 So.2d 301, 312 (Miss. 1999). The complaint offers nothing more than a "formulaic recitation" of that special-injury requirement, *Twombly*, 550 U.S. at 555, merely stating that "Plaintiffs and Class Members have suffered and continue to suffer special injury distinct from that of the public at large," Compl. ¶ 255. That Plaintiffs allege no more is unsurprising: Plaintiffs purport to bring suit *on behalf of* the public at large—*i.e.*, the "more than 10,000 class members [who] reside within the Class Area," *id*. ¶ 223—so they cannot conceivably allege an injury "different in kind than that suffered by the public at large." *Andrews v. Enpro Indus., Inc.*, 2025 WL 837324, at *11 (N.D. Miss. Mar. 17, 2025). Even setting aside that threshold problem, courts across the country have rejected the notion that a generalized objection to noise can support a public nuisance claim. *See, e.g.*, *Wheeler v. Lebanon Valley Auto Racing Corp.*, 303 A.D.2d 791, 793 (N.Y. App. Div. 2003); *Burbank-Glendale-Pasadena Airport Auth.*, 220 Cal. App. 3d 1602, 1610 (Cal. Ct. App. 1990), *opinion modified* (June 18, 1990); *Claassen v. City & Cnty. of Denver*, 30 P.3d 710, 714 (Colo. App. 2000).

**3. Negligent Infliction of Emotional Distress.** Finally, Plaintiffs' allegations do not state a claim for negligent infliction of emotional distress. xAI Mem. 12-15. To state such a claim, Plaintiffs must allege that they suffered a "mental or physical injury *which necessitated or required medical treatment*." *See Sears, Roebuck & Co. v. Devers*, 405 So.2d 898, 902 (Miss. 1981)

(emphasis added). They fail to do so. Plaintiffs allege suffering from harms such as "irritability, anxiety, depression, increased stress, sleep disturbance, and reduced quality of life," Compl. ¶ 288, but they never allege that they received medical treatment for those harms, *id.* "[C]ourts interpreting Mississippi law have uniformly held" that similar "complaints are not sufficient to state a claim for NIED" without any link to treatment for the alleged conditions. *See Williams v. U.S. Bank Nat'l Ass'n*, 2014 WL 847012, at *4 (S.D. Miss. Mar. 4, 2014). And even if Plaintiffs could plead cognizable injuries, they fail to properly allege that any cognizable injuries were "reasonably foreseeable." *Evans v. Miss. Dep't of Hum. Servs.*, 36 So. 3d 463, 476 (Miss. Ct. App. 2010). Plaintiffs offer nothing to suggest that Defendants knew or should have known that the Southaven plant (which sits on property *where another power plant previously operated*) would cause such intense emotional distress that it would lead to an injury "which necessitated or required medical treatment." *Sears*, 405 So.2d at 902.

**CONCLUSION**

For these reasons, the Court should grant the motion and dismiss SpaceX from this case for lack of personal jurisdiction and for failure to state a claim. In the alternative, the Court should dismiss Plaintiffs' causes of action for negligence per se, public nuisance, and negligent infliction of emotional distress.

Dated: July 27, 2026

Respectfully submitted,

*/s/ Daniel W. Van Horn*

Daniel W. Van Horn (MS Bar No. 102105)
BUTLER SNOW LLP
6075 Poplar Ave., Suite 500
Memphis, TN 38187
(901) 680-7331
danny.vanhorn@butlersnow.com

P. Ryan Beckett (MS Bar No. 99524)
BUTLER SNOW LLP
1020 Highland Colony Pkwy., Suite 1400
Ridgeland, MS 39157
(601) 948-5711
(601) 948-5177
ryan.beckett@butlersnow.com

K. Winn Allen, P.C.*
Grace C. Brier*
Megan McGlynn Butler*
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 389-5000
(202) 389-5200
winn.allen@kirkland.com
grace.brier@kirkland.com
megan.butler@kirkland.com

Jeremy A. Fielding, P.C.*
Michael Kalis*
KIRKLAND & ELLIS LLP
4550 Travis Street
Dallas, Texas 75205
(214) 972-1770
(214) 972-1771
jeremy.fielding@kirkland.com
michael.kalis@kirkland.com

J. Matthew Rice*
KIRKLAND & ELLIS LLP
150 3rd Avenue South
Suite 1220
Nashville, Tennessee 37201
(629) 222-0165
(629) 222-0101
matthew.rice@kirkland.com

*Attorneys for Space Exploration Technologies Corp.*

**Pro Hac Vice*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 27, 2026, I filed the foregoing document with the Clerk of the U.S. District Court for the Northern District of Mississippi through the Court's CM/ECF system, which shall send notification of such filing to all parties of record in this case.

*/s/ Daniel W. Van Horn*
Daniel W. Van Horn