**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISION**

| | | |
|---|---|---|
| **Jason Haley, Preston Herrington, and Taylor Logsdon, individually and on behalf of all others similarly situated,** | § § § | |
| *Plaintiffs,* | § | Civil Action No. 3:26-cv-00148-DMB-RP |
| **v.** | § § | |
| **X.AI Corp., Space Exploration Technologies Corp., and MZX Tech LLC,** | § § § | |
| *Defendants.* | § § § | |

**X.AI CORP. AND MZX TECH LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

Daniel W. Van Horn (MS Bar No. 102105)
BUTLER SNOW LLP
6075 Poplar Ave., Suite 500
Memphis, TN 38187
(901) 680-7331
danny.vanhorn@butlersnow.com

P. Ryan Beckett (MS Bar No. 99524)
BUTLER SNOW LLP
1020 Highland Colony Pkwy., Suite 1400
Ridgeland, MS 39157
(601) 948-5711
(601) 948-5177
ryan.beckett@butlersnow.com

*Attorneys for X.AI Corp. and MZX Tech LLC*
**Pro Hac Vice*

K. Winn Allen, P.C.*
Grace C. Brier*
Megan McGlynn Butler*
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 389-5000
(202) 389-5200
winn.allen@kirkland.com
grace.brier@kirkland.com
megan.butler@kirkland.com

Jeremy A. Fielding, P.C.*
Michael Kalis*
KIRKLAND & ELLIS LLP
4550 Travis Street
Dallas, Texas 75205
(214) 972-1770
(214) 972-1771
jeremy.fielding@kirkland.com
michael.kalis@kirkland.com

J. Matthew Rice*
KIRKLAND & ELLIS LLP
150 3rd Avenue South, Suite 1220
Nashville, Tennessee 37201
(629) 222-0165
(629) 222-0101
matthew.rice@kirkland.com

# TABLE OF CONTENTS

**Page**

INTRODUCTION .......... 1

BACKGROUND .......... 2

LEGAL STANDARD .......... 5

ARGUMENT .......... 5

I. The Complaint Fails to State a Claim for Negligence Per Se. .......... 5

II. The Complaint Fails to State a Claim for Public Nuisance. .......... 9

III. The Complaint Fails to State a Claim for Negligent Infliction of Emotional Distress. .......... 12

CONCLUSION .......... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Sandoval*,
532 U.S. 275 (2001)....................8

*Andrews v. Enpro Indus., Inc.*,
2025 WL 837324 (N.D. Miss. Mar. 17, 2025)....................10

*Armstrong v. Sw. Airlines Co.*,
2021 WL 4391247 (N.D. Tex. Sept. 24, 2021)....................6, 7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................1, 5

*Baker v. Burbank-Glendale-Pasadena Airport Auth.*,
220 Cal. App. 3d 1602 (Cal. Ct. App. 1990), *opinion modified* (June 18, 1990)....................11

*Beale v. State*,
361 So. 3d 673 (Miss. Ct. App. 2022)....................8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................5, 10, 12, 14

*Burnside v. Gulf Refin. Co.*,
148 So. 219 (Miss. 1933)....................15

*Claassen v. City & Cnty. of Denver*,
30 P.3d 710 (Colo. App. 2000)....................11

*Coleman v. Danek Med., Inc.*,
43 F. Supp. 2d 629 (S.D. Miss. 1998)....................1, 6

*Comet Delta, Inc. v. Pate Stevedore Co. of Pascagoula, Inc.*,
521 So. 2d 857 (Miss. 1988)....................9, 10

*Crutchfield v. Sewerage & Water Bd. of New Orleans*,
829 F.3d 370 (5th Cir. 2016)....................11

*Cuyler v. United States*,
362 F.3d 949 (7th Cir. 2004)....................6

*Evans v. Miss. Dep't of Hum. Servs.*,
36 So. 3d 463 (Miss. Ct. App. 2010)....................12, 13, 14

*Floyd v. Amite Cnty. Sch. Dist.*,
2008 WL 2954972 (S.D. Miss. July 29, 2008), *aff'd*, 581 F.3d 244 (5th Cir. 2009) .............13

*Goode v. Walmart, Inc.*,
372 So. 3d 149 (Miss. Ct. App. 2023) ............................................................12, 13

*Hollingsworth v. Hercules, Inc.*,
2016 WL 7409130 (S.D. Miss Dec. 22, 2016) ............................................................5

*Ill. Cent. R.R. Co. v. Hawkins*,
830 So. 2d 1162 (Miss. 2002)............................................................................12, 13

*Jackson v. City of Hearne, Tex.*,
959 F.3d 194 (5th Cir. 2020) ...........................................................................................5

*Jenkins v. City of Grenada*,
813 F. Supp. 443 (N.D. Miss. 1993)...............................................................................14

*Marchbanks v. Dolgencorp, Inc.*,
2008 WL 5050136 (N.D. Miss. Nov. 20, 2008) ..............................................................12

*Miller v. E.I. DuPont de Nemours & Co.*,
880 F. Supp. 474 (S.D. Miss. 1994).................................................................................6

*N.G. Hatton Tr. v. Young*,
97 N.E.3d 282 (Ind. Ct. App. 2018)..................................................................................7

*Otto v. Specialties, Inc.*,
386 F. Supp. 1240 (N.D. Miss. 1974)...............................................................................6

*Palmer v. Anderson Infirmary Benevolent Ass'n*,
656 So. 2d 790 (Miss. 1995)..............................................................................................5

*Panhandle Oil Co. v. Trigg*,
114 So. 625 (Miss. 1927)..................................................................................................10

*Petrobras Am., Inc. v. Samsung Heavy Indus. Co., Ltd.*,
9 F.4th 247 (5th Cir. 2021) ...............................................................................................3

*Prescott v. Leaf River Forest Prods., Inc.*,
740 So. 2d 301 (Miss. 1999)..............................................................................................9

*Raymaker v. Am. Family Mut. Ins. Co.,*
718 N.W.2d 154 (Wis. Ct. App. 2006) ...............................................................................6

*Rodriguez v. Am. Cyanamid Co.*,
858 F. Supp. 127 (D. Ariz. 1994) ........................................................................................7

*Scannell Props. #516, LLC,*
2025 WL 1394253 (D. Kan. May 14, 2025)....................6, 7

*Sears, Roebuck & Co. v. Devers*,
405 So. 2d 898 (Miss. 1981)....................12

*Simpson v. Cal. Pizza Kitchen, Inc.*,
989 F. Supp. 2d 1015 (S.D. Cal. 2013)....................10

*St. Dominic-Jackson Mem'l Hosp. v. Newton*,
336 So. 3d 1089 (Miss. 2022)....................9

*Stricklin v. Stefani*,
358 F. Supp. 3d 516 (W.D.N.C. 2018)....................14

*Taylor v. Delta Reg'l Med. Ctr.*,
186 So. 3d 384 (Miss. Ct. App. 2016)....................7, 8

*Tunica Cnty. v. Gray*,
13 So. 3d 826 (Miss. 2009)....................7

*Wheeler v. Lebanon Valley Auto Racing Corp.*,
303 A.D.2d. 791 (N.Y. App. Div. 2003)....................11

*Williams v. U.S. Bank Nat'l Ass'n*,
2014 WL 847012 (S.D. Miss. Mar. 4, 2014)....................13

*Wisniewski v. Rodale, Inc.*,
510 F.3d 294 (3d Cir. 2007)....................7

*Zimmerman v. Highmark, Inc.*,
780 F. Supp. 3d 588 (W.D. Pa. 2025)....................7

*Zyla Life Scis., L.L.C. v. Wells Pharma of Hou., L.L.C.*,
134 F.4th 326 (5th Cir. 2025)....................6

**Statutes**

Southaven, Miss., Code tit. X, ch. 2. ....................8

Southaven, Miss., Code tit. X, ch. 4. ....................8

Wis. Stat. § 704.07....................6

**Other Authorities**

Restatement (Second) of Torts....................9, 10

## INTRODUCTION

X.AI Corp. ("xAI") and MZX Tech LLC ("MZX") made a historic, $20 billion investment in the Southaven region to build data center and power-generation facilities that will create thousands of jobs and further America's strategic objectives. The United States government has already signed contracts to use xAI's technology for national security applications. And state and local leaders have lauded xAI's operations as "a great partnership" that will "bring amazing opportunities to its residents for generations." Complaint, Dkt. No. 1 ("Compl.") ¶¶ 29 n.4, 36.

But a few residents are displeased. And a handful sued, attempting to accomplish through litigation what they couldn't through the political process. Purporting to represent a class of individuals living around the Southaven facility, Plaintiffs contend that xAI's use of turbines to generate electricity—at the same location a Duke Energy Plant previously stood—makes too much noise. And they attempt to use tort claims as a vehicle to stop it. These claims are wholly meritless. xAI and MZX's operations in Southaven comply with all applicable laws—as the record will bear out in this case. But for several claims, this Court should not even "unlock the doors of discovery." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). These claims rest on flawed legal theories and "formulaic recitation[s]" that require dismissal before this case proceeds. *Id.* at 681.

*First*, Plaintiffs' negligence per se claim (the Fourth Cause of Action) fails as a matter of law. That claim turns on the theory that xAI's turbines violate noise ordinances in the Southaven Municipal Code. But the Code calls for governmental, not private, enforcement of those ordinances. And courts have long recognized that when a law forecloses private enforcement, a negligence per se claim cannot proceed. *See, e.g.*, *Coleman v. Danek Med., Inc.*, 43 F. Supp. 2d 629, 633 n.2 (S.D. Miss. 1998) (compiling cases).

*Second*, Plaintiffs' public nuisance claim (the Second Cause of Action) lacks sufficient factual allegations. Under Mississippi law, private parties can assert public nuisance only by

alleging an injury that *differs* from that suffered by the public at large. But Plaintiffs here purport to bring suit *on behalf of* the public—the more than 10,000 people that live in the vicinity of the facility. The complaint's assertions, moreover, are simply too generalized to state a noise-based, public nuisance claim.

*Third*, Plaintiffs' claim for negligent infliction of emotional distress (the Fifth Cause of Action) is doubly deficient on injury. The complaint fails to allege any emotional distress that necessitated or required medical treatment—a prerequisite under Mississippi law. And it fails to plausibly allege that any such injury was foreseeable.

The Court should grant the motion and dismiss the Second, Fourth, and Fifth Causes of Action for failure to state a claim under Rule 12(b)(6).

## BACKGROUND

Artificial intelligence ("AI") is driving profound progress for modern-day society, accelerating scientific discovery, boosting productivity, and enhancing national security. "[U]sing artificial neural networks that are trained on extremely large amounts of data," Compl. ¶ 48, AI systems can perform complex tasks with remarkable efficiency. *Id.* ¶ 45. To power these systems, "thousands of high-performance servers housed within data centers" provide AI platforms with "enormous computing capacity." *Id.* ¶¶ 45, 49. These types of data centers "have existed in some capacity for years[,] … enabl[ing] a wide range of digital services." *Id.* ¶ 44.

In 2024, xAI built a data center in Memphis, Tennessee to house the "world's largest AI supercomputer." Compl. ¶ 73. xAI is "a cutting-edge AI company focused on developing and deploying advanced large-scale AI models." *Id.* ¶ 72. Its Memphis operations marked a historic

investment in the region, creating hundreds of jobs and positioning the region as "the Digital Delta." Ex. A (referenced at Compl. ¶ 73 n.25).[1]

That investment expanded in 2025. xAI opened a second data center in Whitehaven, Tennessee, Compl. ¶ 78, and shortly thereafter, MZX opened a power-generation facility in Southaven, Mississippi (the "Southaven Plant"). *Id.* ¶ 80. This facility—located on an industrially zoned property that was "once occupied by a Duke Energy power plant," *id.* ¶ 81—ensures that xAI has sufficient electricity for its operations in the region. Specifically, MZX operates "natural gas turbines to temporarily power the supercomputer as an alternative to using the Memphis power grid, ensuring that the supercomputer never jeopardizes citizens' access to power." Ex. A at 2.

State and local officials hailed xAI's operations. The Mayor of Southaven noted that "[a] development of this magnitude is coveted worldwide and will bring exponential benefits to Southaven, DeSoto County, Mississippi and the Mid-South region." Ex. B (referenced at Compl. ¶ 36 n.7). He recognized that "the entire region will feel the major financial benefits, career opportunities and community enhancement both by xAI's direct operations and ensuing economic growth spurred by them." *Id.* And he confirmed that "xAI has followed all of the regulatory processes to obtain a permit to operate here," *id.*, declaring "xAI and Southaven, Mississippi, a great partnership now and into the future!" Compl. ¶ 36.

A few months later, xAI expanded that partnership when it announced plans to construct a new data center in Southaven, approximately one mile from the Southaven Plant. Compl. ¶ 131. Mississippi's Governor touted xAI's investment as "the largest economic development project in

[1] At the motion-to-dismiss stage, this Court may consider not only the complaint but also documents "referenced" in the complaint. *Petrobras Am., Inc. v. Samsung Heavy Indus. Co., Ltd.*, 9 F.4th 247, 252 n.2 (5th Cir. 2021).

Mississippi's history," one that will "bring amazing opportunities to its residents for generations." Ex. C (referenced at Compl. ¶ 29 n.4).

Not everyone shared in the enthusiasm, though. A handful of Southaven residents (including some of the named plaintiffs here) founded a non-profit group in response to xAI's operations. Unsatisfied with the due diligence conducted by local officials and environmental experts, *see* Compl. ¶ 116, Plaintiffs launched a campaign against the Southaven Plant. Plaintiffs "began contacting their elected officials," "fil[ing] noise complaints," "sp[eaking] with the local police department," signing petitions, and making their views known at the meeting of the Mayor and Board of Aldermen of Southaven. *Id.* ¶¶ 113-16, 123-24, 128, 134. They also "organized and submitted comments opposing Defendants' expansion efforts and permit applications, challenged governmental approvals, and brought widespread public attention to the issue through local and national media coverage." *Id.* ¶ 217.

When their lobbying blitz and media push failed, they turned to the courts. Plaintiffs filed a class-action complaint against xAI, MZX, and Space Exploration Technologies Corporation on behalf of a putative class of approximately 10,000 "individuals who resided in and/or owned residential property" within a specified geographic area, including the many residents who benefit economically from xAI's investment in Southaven. Compl. ¶¶ 220-24. The complaint alleges that the MZX facility generates noise and vibration that interferes with the putative class's use and enjoyment of nearby property, negatively impacts their health, and reduces their property values—even though some putative class members are multiple miles from the facility. *See, e.g.*, *id.* ¶¶ 8-10, 54-64, 85, 184-216, 221. Plaintiffs further allege that while MZX took mitigating measures (like erecting a "sound wall"), those measures failed to ameliorate their noise concerns, *id.* ¶¶ 129-

31. Plaintiffs seek both damages and injunctive relief for private and public nuisance, negligence, negligence per se, and negligent infliction of emotional distress. *Id.* ¶¶ 236-90.

xAI and MZX move to dismiss Plaintiffs' claims for negligence per se, public nuisance, and negligent infliction of emotional distress.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. Meeting this standard "requires more than labels and conclusions"; it requires factual allegations that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] formulaic recitation of the elements of a cause of action will not do." *Id.* When a complaint fails to allege sufficient *facts* for each element of the asserted claim, plaintiffs are "not entitled to discovery, cabined or otherwise." *See Jackson v. City of Hearne, Tex.*, 959 F.3d 194, 202 (5th Cir. 2020) (quotation omitted).

## ARGUMENT

### I. The Complaint Fails to State a Claim for Negligence Per Se.

Plaintiffs' negligence per se claim fails because Southaven's Municipal Code forecloses a private right of action.

Under Mississippi law, "the doctrine of negligence per se … in essence provides that breach of a statute or ordinance renders the offender liable in tort without proof of a lack of due care." *Palmer v. Anderson Infirmary Benevolent Ass'n*, 656 So. 2d 790, 796 (Miss. 1995) (quotations omitted). Negligence per se claims are unavailable, though, when the statute or ordinance evinces a lack of legislative intent to allow private enforcement. Time and again, Mississippi federal courts have recognized that "where [a] statute provides no private right of action, violation of said statute will not support a claim of negligence per se." *Hollingsworth v.*

*Hercules, Inc.*, 2016 WL 7409130, at *5 (S.D. Miss Dec. 22, 2016) (citing *Coleman*, 43 F. Supp. 2d at 633 n.2); *see also Otto v. Specialties, Inc.*, 386 F. Supp. 1240, 1244-45 (N.D. Miss. 1974) (same); *Miller v. E.I. DuPont de Nemours & Co.*, 880 F. Supp. 474, 480 (S.D. Miss. 1994) (same, noting that an "alleged violation of that statute by defendant cannot provide a basis for a negligence per se claim" because the legislature "did not intend to create a private right of action").

That rule makes sense. Between federal, state, and local laws, the government "has its hands in nearly every facet of human existence." *Cf. Zyla Life Scis., L.L.C. v. Wells Pharma of Hou., L.L.C.*, 134 F.4th 326, 335 (5th Cir. 2025). Courts rightly recognize that legislatures don't intend for each and every one of those laws to serve as a basis for tort liability. "Otherwise every statute that specified a standard of care would be automatically enforceable by tort suits for damages—every statute in effect would create an implied private right of action—which clearly is not the law." *Cuyler v. United States*, 362 F.3d 949, 952 (7th Cir. 2004) (Posner, J.).

Mississippi's rule also tracks the approach taken by state and federal courts across the country, which routinely deny negligence per se claims when the underlying statutory scheme contains no private right of action. In *Armstrong v. Sw. Airlines Co.*, for example, the Northern District of Texas held that a statute cannot form "a proper basis for a negligence per se claim" when it "contains no private right of action" and "evinces a Congressional intent to disallow private rights of action not included in the statute—including negligence per se." 2021 WL 4391247, at *3-4 (N.D. Tex. Sept. 24, 2021). In *Raymaker v. Am. Family Mut. Ins. Co.*, the Wisconsin Court of Appeals rejected a negligence per se claim because "[n]othing in the history suggests any intent by the legislature to impose negligence per se for a violation of [Wis. Stat.] § 704.07." 718 N.W.2d 154, 159 (Wis. Ct. App. 2006). And in *Kremer v. Scannell Props. #516, LLC*, the District of Kansas recognized that "[t]o establish a claim of negligence per se … Plaintiffs also must show

that the legislature intended an individual right of action for injury arising out of the alleged violation." 2025 WL 1394253, at *3 (D. Kan. May 14, 2025). The list goes on. *See, e.g.*, *Zimmerman v. Highmark, Inc.*, 780 F. Supp. 3d 588, 603 (W.D. Pa. 2025); *Rodriguez v. Am. Cyanamid Co.*, 858 F. Supp. 127, 131 (D. Ariz. 1994).

This requirement dooms Plaintiffs' negligence per se claim. Plaintiffs premise their negligence per se claim on an alleged violation of the "Noise Control" provisions in Title X, Chapter 2 of the Southaven Municipal Code. *See* Compl. ¶¶ 269-83. But nothing in those provisions provides an express private right of action related to noise control. Nor is there any basis for inferring a private right of action. Mississippi courts "will not find a private cause of action when there is no apparent legislative intent to establish one, and the party asserting a right of action [bears] the burden of establishing the required legislative intent." *Taylor v. Delta Reg'l Med. Ctr.*, 186 So. 3d 384, 391 (Miss. Ct. App. 2016) (alteration in original) (quotations omitted). To carry that burden, a plaintiff must point to "the language of the statute, the statutory structure, or some other source" establishing that "the essential predicate for implication of a private remedy … exist[s]." *Tunica Cnty. v. Gray*, 13 So. 3d 826, 830 (Miss. 2009) (quotations omitted). Plaintiffs cannot do so here.

To start, Chapter 2's "agency enforcement [scheme] creates a strong presumption against implied private rights of action." *Wisniewski v. Rodale, Inc.*, 510 F.3d 294, 305 & n.31 (3d Cir. 2007). When a statute forms "a comprehensive regulatory scheme, enforced by a governmental agency," it "evinces a [legislative] intent to disallow private rights of action not included in the statute—including negligence per se." *Armstrong*, 2021 WL 4391247, at *4; *see also N.G. Hatton Tr. v. Young*, 97 N.E.3d 282, 287-88 (Ind. Ct. App. 2018) (rejecting negligence per se claim predicated on municipal ordinance which "contain[ed] clear enforcement provisions" and granted

enforcement powers to "Plan Commission"). The text of Chapter 2 specifically dictates that governmental actors, not private parties, enforce the Code's noise ordinances: "The enforcement of this chapter shall be the responsibility of the chief of police or his designee." Southaven, Miss., Code tit. X, ch. 2., art. IV § 10-141. The "chief of police" is "responsible for" "[t]raining field inspectors," "[c]oordinating the noise control program with other governmental agencies," "evaluat[ing] the effectiveness of the noise control program," "grant[ing] special condition permits," and "revok[ing] any permit issued." *Id.* §§ 10-141, 10-142, 10-143, 10-146. "The express provision of one method of enforcing" the Code's noise ordinance indicates that Southaven "intended to preclude others." *Cf. Alexander v. Sandoval*, 532 U.S. 275, 290 (2001). Indeed, Plaintiffs acknowledge the primacy of governmental enforcement in their complaint, noting that residents "report noise disturbances" by calling the Southaven Police Department and filing noise complaints "through Southaven's code enforcement website." Compl. ¶¶ 136, 164; *see also id.* ¶¶ 137, 217 (similar). Put simply, the Code's vesting of authority in the government to "take appropriate corrective action" affirmatively negates the existence of an implied private right of action, *Taylor*, 186 So. 3d at 391, and thus, forecloses Plaintiffs' negligence per se claims.

The structure of the Code confirms the text's allocation. For example, other chapters in the Code include remedy-related language that Chapter 2 lacks. The following is found in Chapter 4 of the Code: "This remedy is not an exclusive remedy available under any state or local laws and *may be used in conjunction with such other laws*." Southaven, Miss., Code tit. X, ch. 4. § 10-251 (emphasis added). The omission of any such language in Chapter 2 reflects Southaven's commitment to governmental, not private, enforcement of the noise ordinances. *Cf. Beale v. State*, 361 So. 3d 673, 679-80 (Miss. Ct. App. 2022) (describing negative implication canon).

Finally, the absence of a viable negligence per se claim makes particular sense in the context of noise regulation. As the Second Restatement explains, courts generally "will not adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively … to secure to individuals the enjoyment of rights or privileges to which they are entitled only as members of the public." Restatement (Second) of Torts § 288 (1965) ("Restatement"); *Cf. St. Dominic-Jackson Mem'l Hosp. v. Newton*, 336 So. 3d 1089, 1095 (Miss. 2022) (citing the Restatement). The Restatement gives the example of a statute designed "to secure the public right of unobstructed passage on the public highway, or *freedom from excessive noise*," and explains that "[i]n the ordinary case, … harm suffered by such an individual is not within the purpose of the provision, and the statute or regulation will not be taken to lay down a standard of conduct with respect to such harm." Restatement § 288 cmt. C (emphasis added).

The bottom line: Chapter 2's "Noise Control" provisions can be enforced only through governmental action, and Plaintiffs cannot circumvent the Southaven Municipal Code by bringing a negligence per se claim.

## II. The Complaint Fails to State a Claim for Public Nuisance.

Plaintiffs also fail to allege a public nuisance claim.

"A public nuisance is an unreasonable interference with a right common to the general public," such as conduct involving "a significant interference with the public health." *Comet Delta, Inc. v. Pate Stevedore Co. of Pascagoula, Inc.*, 521 So. 2d 857, 860 (Miss. 1988) (quoting Restatement § 821B). Whether seeking an injunction or damages, a "private individual can recover in tort for a public nuisance only if he has suffered harm of a different kind from that suffered by other persons exercising the same public right." Restatement § 821C; *see also Prescott v. Leaf River Forest Prods., Inc.*, 740 So. 2d 301, 312 (Miss. 1999) (a "claim for a public nuisance"

requires "proof that [the plaintiffs] suffered harm different from that of the general public"). That is, plaintiffs must point to some "special injury." *Panhandle Oil Co. v. Trigg*, 114 So. 625, 626 (Miss. 1927) (collecting authorities). That rule, the Restatement explains, leaves "invasions of rights common to all of the public … to be remedied by action by public officials." Restatement § 821C.

Plaintiffs here fail to allege a special injury. To be sure, the complaint says that "Plaintiffs and Class Members have suffered and continue to suffer special injury distinct from that of the public at large." Compl. ¶ 255. But that is merely a "formulaic recitation" of the elements of their public nuisance claim without the required, plausible factual allegations to support it. *Twombly*, 550 U.S. at 555. Indeed, the complaint almost verbatim repeats the requirement that there be a special injury "'different in kind … than that suffered by the public at large,'" without any specific factual allegations or explanation as to *why* they've suffered such an injury or *why* they have a "special interest." *Andrews v. Enpro Indus., Inc.*, 2025 WL 837324, at *11 (N.D. Miss. Mar. 17, 2025) (quoting *Comet Delta*, 521 So. 2d at 861).

There's a reason Plaintiffs do not and cannot assert anything more: A complaint cannot allege a "special injury distinct from that of the public at large," Compl. ¶ 255, while simultaneously purporting the bring suit on behalf of the public at large—*i.e.*, the "more than 10,000 class members" who reside in the area. *Id.* at ¶ 223. But that is precisely what the complaint here purports to do. The putative class set out in the complaint *is the public*—i.e., the entire community or neighborhood. So, it's impossible for the complaint to allege an injury "'different in kind … than that suffered by the public at large.'" *Andrews*, 2025 WL 837324 at *11 (quoting *Comet Delta*, 521 So. 2d at 861); *see, e.g.*, *Simpson v. Cal. Pizza Kitchen, Inc.*, 989 F. Supp. 2d 1015, 1025 n.6 (S.D. Cal. 2013) (expressing "doubt as to the compatibility of a public nuisance

c[l]aim with the class action vehicle"). Plaintiffs can't have their cake (attempting to represent the whole community) and eat it too (claiming special injuries that set them apart from the community).[2]

Courts across the country have rejected the notion that a generalized objection to noise can support a public nuisance claim. Take, for instance, *Wheeler v. Lebanon Valley Auto Racing Corp.*, which involved complaints about noise from a racetrack. 303 A.D.2d. 791 (N.Y. App. Div. 2003). The court explained that "every member of the community was exposed to excessive noise from the same source." *Id.* at 793. Because the plaintiffs could not "show an injury other than the annoyance of loud noises," their public nuisance claim failed. *Id.* And, as other courts have noted, even if a particular plaintiff is "subjected to greater noise levels than those suffered by the general public," that is a difference "of degree only," and will "not support an action based on public nuisance." *Baker v. Burbank-Glendale-Pasadena Airport Auth.*, 220 Cal. App. 3d 1602, 1610 (Cal. Ct. App. 1990), *opinion modified* (June 18, 1990); *see also Claassen v. City & Cnty. of Denver*, 30 P.3d 710, 714 (Colo. App. 2000) ("the greater amounts of noise and pollution suffered by a landowner adjacent to a public highway are not different in kind from the effects suffered by the public in general").

---

[2] To be clear, Defendants dispute that any member of the class suffered any cognizable injury. And Defendants vigorously dispute the appropriateness of class treatment and will, at the appropriate time, argue to the Court that class certification should be denied. Among other problems with the purported class, it is plain that any injury determination will require an individualized showing. *See, e.g.*, *Crutchfield v. Sewerage & Water Bd. of New Orleans*, 829 F.3d 370, 376, 378 (5th Cir. 2016). The point for current purposes, though, is that the complaint cannot purport to claim an injury that differs from the public when it purports to bring suit on behalf of the public.

In short, the complaint merely provides a "formulaic recitation" of the special-injury requirement, *Twombly*, 550 U.S. at 555, and Plaintiffs cannot overcome the inherent contradictions in their allegations. The Court should thus dismiss Plaintiffs' public nuisance claim.

**III. The Complaint Fails to State a Claim for Negligent Infliction of Emotional Distress.**

Plaintiffs' claim for negligent infliction of emotional distress also fails on the pleadings. To state such a claim, Plaintiffs must allege that they suffered emotional distress that led to "some sort of injury or demonstrable harm, whether it be physical or mental, and that harm must have been reasonably foreseeable to the defendant." *Goode v. Walmart, Inc.*, 372 So. 3d 149, 164 (Miss. Ct. App. 2023). The complaint simply fails to allege any facts that could support a cognizable harm—let alone facts showing that such harm was "reasonably foreseeable."

To start, Plaintiffs' claim for negligent infliction of emotional distress fails to allege any "mental or physical injury *which necessitated or required medical treatment*"—an essential requirement under Mississippi law. *Sears, Roebuck & Co. v. Devers*, 405 So. 2d 898, 902 (Miss. 1981) (emphasis added). Mississippi courts recognize that "[m]ental anguish is a nebulous concept" and thus require plaintiffs to put forward a "substantial" showing for recovery. *Ill. Cent. R.R. Co. v. Hawkins*, 830 So. 2d 1162, 1174 (Miss. 2002). Unsubstantiated distress or mental anguish—without "treatment … linked to the[] alleged conditions"—is not sufficient. *Goode*, 372 So. 3d at 164. Thus, at the pleading stage, Plaintiffs must at least allege that their injuries required "medical or psychological treatment." *Evans v. Miss. Dep't of Hum. Servs.*, 36 So. 3d 463, 476 (Miss. Ct. App. 2010).

Courts applying Mississippi law routinely reject claims for failure to do just that. For instance, this Court held that alleged conditions such as "depression and difficulty sleeping" are inadequate when "unsupported by medical testimony." *Marchbanks v. Dolgencorp, Inc.*, 2008 WL 5050136, at *8 (N.D. Miss. Nov. 20, 2008); *see also Evans*, 36 So. 3d at 476 (rejecting

evidence of "sleeplessness and general worries" for failure to link those injuries to "medical or psychological treatment"). Similarly, the Mississippi Supreme Court rejected testimony regarding visits to "an unnamed doctor … three times" for "sleeplessness and nightmares" as insufficient, explaining that such testimony "cannot support a damage award for emotional distress." *Ill. Cent. R.R. Co.*, 830 So.2d at 1175. Another federal court rejected complaints of "nightmares and difficulty sleeping," plus being "agitated, shaky, angry and upset," explaining that those are simply "not the types of injuries that satisfy the requirement." *Floyd v. Amite Cnty. Sch. Dist.*, 2008 WL 2954972, at *15 (S.D. Miss. July 29, 2008), *aff'd*, 581 F.3d 244 (5th Cir. 2009). Nor can plaintiffs establish a cognizable injury by merely pleading that they are "very depressed," "very upset and emotional," or "not able to sleep." *Evans*, 36 So. 3d at 476 (quotation omitted).

Here, Plaintiffs have not alleged that their emotional distress led to any injuries requiring "medical or psychological treatment." *Id*. Plaintiffs allege that they are suffering "severe emotional distress, including irritability, anxiety, depression, increased stress, sleep disturbance, and reduced quality of life," as well as "nuisance-level physical harms including headaches, nausea, and tinnitus." Compl. ¶¶ 288-89. But even accepting those allegations as true, "courts interpreting Mississippi law have uniformly held" that complaints of "distress[]," "lost sleep," and being "extremely worried" are "not sufficient to state a claim for [negligent infliction of emotional distress]," and complaints of other physical symptoms like "nausea" and "dizziness" are "insufficient as a matter of law to establish negligent infliction of emotional distress" absent any link to "treatment" for "these alleged conditions." *Williams v. U.S. Bank Nat'l Ass'n*, 2014 WL 847012, at *4 (S.D. Miss. Mar. 4, 2014); *Goode*, 372 So. 3d at 164.

In short, the complaint does not contain "enough factual matter (taken as true) to suggest that" Plaintiffs required or obtained treatment for their injuries, and that deficiency requires dismissal. *Twombly*, 550 U.S. at 556.

What is more, even if the Court assumes the allegation of cognizable injuries, Plaintiffs failed to allege that any cognizable injuries were "reasonably foreseeable." *Evans*, 36 So. 3d at 476. In Plaintiffs' telling, "Defendants knew or should have known that constant industrial noise and vibration from their operations can cause severe stress, anxiety, and sleep disturbance." Compl. ¶ 286. But that is not the question. The question is whether Defendants knew or should have known that their operations would cause emotional distress leading to "a medically cognizable physical illness or injury" that required medical treatment. *Jenkins v. City of Grenada*, 813 F. Supp. 443, 446 n.7 (N.D. Miss. 1993). On that pertinent question, the complaint says nothing.

The closest Plaintiffs come to pleading foreseeability is the allegation that, generally speaking, data centers are loud, *see* Compl. ¶ 65, and a *different* xAI facility, Colossus I, also inspired objections to "the turbines' harmful emissions, including noise pollution," *id*. ¶ 77. But Plaintiffs cannot allege foreseeability with generalized assertions about industrial operations that ignore site-specific considerations and the requirement for medical or psychological treatment. *Cf. Stricklin v. Stefani*, 358 F. Supp. 3d 516, 533 (W.D.N.C. 2018) ("[T]here must be some degree of specificity in the foreseeability analysis."). These are different data centers at different locations with different surroundings and likely different equipment. And even if other data centers cause noticeable noise, Plaintiffs nowhere allege that other data centers caused conditions requiring "medical or psychological treatment." *Evans*, 36 So. 3d at 476. Indeed, the Colossus I facility has been online since late 2024 with no legal action alleging such harms.

At bottom, the foreseeability element does not require Defendants to "anticipate an unusual, improbable, or extraordinary occurrence, though such happening is within the range of possibilities." *Burnside v. Gulf Refin. Co.*, 148 So. 219, 221 (Miss. 1933). Plaintiffs must allege facts showing that it would have been foreseeable to xAI that operating a power plant (*at the same location* that a Duke Energy Plant previously stood) would cause an injury requiring medical or psychological treatment. They haven't, so the complaint fails to state a claim.

**CONCLUSION**

The Court should dismiss Plaintiffs' claims for negligence per se (the Fourth Cause of Action), public nuisance (the Second Cause of Action), and negligent infliction of emotional distress (the Fifth Cause of Action).

Dated: July 27, 2026

Respectfully submitted,

*/s/ Daniel W. Van Horn*

Daniel W. Van Horn (MS Bar No. 102105)
BUTLER SNOW LLP
6075 Poplar Ave., Suite 500
Memphis, TN 38187
(901) 680-7331
danny.vanhorn@butlersnow.com

P. Ryan Beckett (MS Bar No. 99524)
BUTLER SNOW LLP
1020 Highland Colony Pkwy., Suite 1400
Ridgeland, MS 39157
(601) 948-5711
(601) 948-5177
ryan.beckett@butlersnow.com

K. Winn Allen, P.C.*
Grace C. Brier*
Megan McGlynn Butler*
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 389-5000
(202) 389-5200
winn.allen@kirkland.com
grace.brier@kirkland.com
megan.butler@kirkland.com

Jeremy A. Fielding, P.C.*
Michael Kalis*
KIRKLAND & ELLIS LLP
4550 Travis Street
Dallas, Texas 75205
(214) 972-1770
(214) 972-1771
jeremy.fielding@kirkland.com
michael.kalis@kirkland.com

J. Matthew Rice*
KIRKLAND & ELLIS LLP
150 3rd Avenue South
Suite 1220
Nashville, Tennessee 37201
(629) 222-0165
(629) 222-0101
matthew.rice@kirkland.com

*Attorneys for X.AI Corp. and MZX Tech LLC*

**Pro Hac Vice*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 27, 2026, I filed the foregoing document with the Clerk of the U.S. District Court for the Northern District of Mississippi through the Court's CM/ECF system, which shall send notification of such filing to all parties of record in this case.

*/s/ /s/ Daniel W. Van Horn*
Daniel W. Van Horn